# EXHIBIT D



LAW OFFICES
# JOSEPH, BABENER & CARPENTER
500 MORGAN PARK BUILDING
729 S.W. ALDER STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 226-6600
TELEPHONE (503) 295-6260

THOMAS P. JOSEPH, JR.
JEFFREY A. BABENER*
DUNBAR S. CARPENTER
MICHAEL McARTHUR-PHILLIPS
KIMBERLEE S. COLLINS MORR
LORI A. VOSEJPKA'
CHRISTOPHER C. S. BLATTNER

OF COUNSEL
ROBERT W. McMENAMIN
LEONARD D. DUBOFF**
PROFESSOR OF LAW
LEWIS & CLARK LAW SCHOOL

ALSO MEMBER OF
*CALIFORNIA BAR
**NEW YORK BAR
'MINNESOTA BAR

March 12, 1986

Mr. Albin Drost
Trademark Attorney
Patent and Trademark Office
Law Office I
Box 5
Washington, D.C. 20231

RE:  Serial #73/564335 - "(In Plain English)"
     Mailing Date: January 31, 1986

Dear Mr. Drost:

We have reviewed your decision denying registration to the mark "(In Plain English)" as used by the applicant, Leonard D. DuBoff. Your conclusion, as indicated in your letter of January 3, 1986, was based on the following analysis:

    1)  That the mark is "merely descriptive" of the characteristics of the goods with which the mark is used;

    2)  That the mark so resembles a previously registered mark as to be likely to cause confusion, mistake or to deceive; and

    3)  That the mark is part of a title of a single work and unregistrable under Sections 1, 2 and 45 of the Act.

In response to each of the bases for refusing registration we submit the following information for your consideration:

    1)  When viewed in its visual representation - as a subtitle contained within parentheses - and in its entirety, applicant's mark serves more than to merely describe characteristics of applicant's goods. That parenthetical expression of the subtitle was intended to and operates to identify the source of applicant's goods. A descriptive meaning must be communicated to the public by means of the mark taken as a whole, not through an analysis of its various components only. For example, two or more descriptive terms may be combined to form a valid, arbitrary trademark. Q-Tips, Inc. v. Johnson & Johnson, 206 F2d. 144, 98 U.S.P.Q. 86 (3rd Cir.) cert. denied, 346, U.S. 867 1953). In order to qualify, the combined mark must be viewed in its entirety by the purchasing public, not merely as two separate, descriptive terms but as designating the source of the product.

Mr. Albin Drost
March 11, 1986
Page 2

Here, the parenthetical expression of applicant's mark serves the purpose of identifying the source of applicant's goods and distinguishing that mark from another without the parentheses. Admittedly, that mark without the parentheses would be merely descriptive. It is those parentheses which make the otherwise descriptive phrase arbitrary and capable of identifying the source of the applicant's goods.

2) Applicant further submits that the use of its mark on law books is not likely to cause confusion among the public between it and a similarly sounding registered mark as used on computer programs. In fact, applicant specifically agrees to amend its registration application to exclude any intent to use applicant's mark on any product even remotely connected with computer programs.

Using the checklist found in <u>In Re E.I. du Pont de Nemours & Co.</u>, 476, F2d. 1357, 177 U.S.P.Q. 563 (CCPA 1973) to analyze the "likelihood of confusion" question applicant submits that its mark is distinguishable from prior registrant's in physical appearance, applicant's mark being a parenthetical subtitle on law books and registrant's, a prominent title on computer program materials. Also the goods sold under each mark are totally unrelated and likely to appeal to different segments of the buying public. Although each product might be sold through similar commercial channels - bookstores - within those stores each would be offered for sale in distinctly separate, non-confusing areas. It appears unlikely that one looking for a law book would likely even see, much less be confused by a similarly titled computer programming book and vice-versa. Also registrant's mark has not achieved such fame and popularity that applicant's somewhat similarly sounding mark would likely be confused with it or indicate, incorrectly, that applicant's goods originated with registrant. For these reasons, applicant submits that its mark is not likely to be confused with registrant's.

(3) Please understand, too, that applicant has two books currently using this title and plans to publish a series of law-related books under the "(In Plain English)" mark. Applicant intends to have that mark identify its entire series of books as originating from one reliable, distinctive source. In this light, mark can be seen as not only being part of a title of two books but also as a title of a series of books and it serves to identify the source of that series. I am enclosing for your information a brochure on both titles.

In <u>In Re Scholastic, Inc.</u>, 223 U.S.P.Q. 431 (TTAB 1984) it was acknowledged that the law says an arbitrary designation used to identify the source of a series of books may be registrable matter. A recognition of a term or trademark is dependent on the commercial impression made on the public by that term. While a title of a single book is not registrable - it merely identifies the contents of that book - the title of a series of books that serves the trademark function of source identification is

Mr. Albin Drost
March 11, 1986
 Page 3

registrable. Each book in the series has its own individual title, so the series' name is not necessarily descriptive of any one book. In Re Cooper, 117 U.S.P.Q. 396, 400 (CCPA 1958). Here, applicant's mark "(In Plain English)", as used on a series of books, can operate to identify the source of the book but can not describe the contents of any book in that series. For your review I am also enclosing a copy of The Law (In Plain English) for Craftspeople.

In summary, the distinctive parenthetical nature of applicant's mark distinguishes it from similar marks; the mark is used on non-competing, non-related products; and the mark is used on a series of books, and not as a single title. In light of the preceding information, we request that you re-examine the application and grant applicant's registration.

Sincerely,

*Leonard D. DuBoff*
Leonard D. DuBoff

LDD/klm
Enclosures
    1.  Brochure
    2.  Book

                    CERTIFICATE OF MAILING

    I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Commissioner of Patents and Trademarks, Washington, D.C., 20231, on March 12, 1986.

    March 12, 1986                    *Leonard D. DuBoff*
    Date                              Leonard D. DuBoff

Case 3:13-cv-00436-SI   Document 6-4   Filed 04/15/13   Page 5 of 13

# THE LAW (IN PLAIN ENGLISH)™ FOR CRAFTSPEOPLE

"Invaluable"—Jack Lenor Larsen

# BUSINESS FORMS AND CONTRACTS (IN PLAIN ENGLISH)™ FOR CRAFTSPEOPLE

"Sound information without legal mumbo jumbo"
—Carol Sederstrom, President, American Craft Council



# ORDER FORM

Please send ____ copies of **LAW FOR CRAFTSPEOPLE**, $7.95 each  _____

Please send ____ copies of **FORMS & CONTRACTS**, $14.95 each  _____

Postage/handling: $1 1st copy, $.50 each additional copy  _____

7.9% tax (Washington State residents only):
  LAW $.63 per copy    BUSINESS $1.18 per copy  _____

TOTAL _____

Enclosed is my check for $ _____

Please bill my Visa # _____ Exp _____

Master Card # _____ Exp _____

NAME _____

ADDRESS _____

_____

MAIL THIS FORM TO
**MADRONA PUBLISHERS**
P.O. Box 22667
Seattle, Washington 98122

For information regarding quantity discounts, call (206) 325-3973

EXHIBIT D
Page 4 of 12

## Two Important Books on Crafts Law
## by Attorney Leonard DuBoff

Leonard D. DuBoff is a professor of law, a practicing attorney, and past president of the Oregon Volunteer Lawyers for the Arts. He is one of a handful of recognized experts on law and the arts, and is author of several books, including *The Deskbook of Art Law*, *Book Publishers' Legal Guide*, and *Art Law in a Nutshell*.

## THE LAW (IN PLAIN ENGLISH)™ FOR CRAFTSPEOPLE

"Many times you are at a loss to ask intelligent questions of an expert dealing with problems that you encounter. Reading a book such as this before consigning work, writing contracts or setting up your home studio will provide you with the nitty-gritty that will be helpful in making decisions and asking the right questions of the experts....will put you on the right track and focus your attention on the needs and pitfalls of being a good business person. We highly recommend this for your bookshelf."--*The Ohio Craftsman Review*

"...written in clear, easy to understand language...a valuable resource for the craftsperson."--*The Professional Quilter*

"Here is an excellent source for amateurs and professionals." --*The Crafts Tradesman*

"I suggest that every craftsperson utilize a portion of the proceeds from the next sale to acquire a copy for his or her book shelf. And once on the book shelf not to leave it there, but to refer to it, daily if necessary..."--Lawrence Miscall, Jr., *The Crafts Report*

"...clear, non-legal lanuage, covering issues of concern to craftspeople who need to acquire business skills and a grasp of legal principles."--*Chip Chats*

### INCLUDES:

- Trademarks
- Consignment
- Copyrights
- Contracts
- Working at Home
- Insurance
- Organizing a Business
- Getting Paid
- Keeping Taxes Low
- Product Liability

## BUSINESS FORMS AND CONTRACTS (IN PLAIN ENGLISH)™ FOR CRAFTSPEOPLE


*Just Published!*

"I would hope that all who are in the business of crafts find a prominent place on their bookshelves for this volume." --Carol Sederstrom, President, American Craft Council

Special 8 1/2 x 11 Format Presents Contracts in Usable Size

### INCLUDES:

- Points to Consider before Signing a Lease
- Consignment Agreement with a Gallery or Store
- Commission and Special-Order Contracts
- Copyright Forms: Application, Assignment, etc
- Contract for Teaching a Seminar or Workshop
- Record-Keeping Forms for Tax Purposes
- Collection Letters of Increasing Severity
- Warranties and Disclaimers
- Contracts with Employees, Independent Contractors, and Models
- Glossary of Commonly Used Legal Terms
- Checklist for Saving Time and Money When Incorporating

## ORDER FORM ON REVERSE

U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office

IN REPLY REFER TO THE FOLLOWING AND THE FILING DATE:

| SERIAL NO. | APPLICANT | | Paper No. |
|---|---|---|---|
| 73/564335 | DUBOFF, LEONARD D. | | |
| MARK | | | ADDRESS: |
| (IN PLAIN ENGLISH) | | | Commissioner of Patents and |
| ADDRESS | | ACTION NO. | Trademarks Washington, DC 20231 |
| LEONARD D. DUBOFF MCMENAMIN, JOSEPH, BABENER & CARPENTER 729 S.W. ALDER STREET SUITE 500 PORTLAND, OREGON 97205 | | MAILING DATE 01/31/86 | The address of all correspondence not containing fee payments should include the word "Box 5." |
| FORM PTO-1525 (2-84) | U.S. DEPT. OF COMM. PAT. & TM OFFICE | | |

Also furnish: (1) Serial number of application, (2) The mark, (3) Examining Attorney's name and Law Office number, (4) Mailing date of this action, and (5) Applicant's name (or applicant's attorney), telephone number and zip code.

A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID ABANDONMENT.

564335

I have reviewed this application for trademark (and/or service mark) registration and you are advised as follows:

Registration is refused on the Principal Register because the mark, when applied to the goods, is considered to be merely descriptive thereof. (Section 2(e)(1) of the Trademark Act, 15 U.S.C. 1052(e)(1); TMEP section 1207.)

A term is merely descriptive within the meaning of Section 2(e)(1) of the Trademark Act (15 U.S.C. 1052(e)(1)) if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, function, or feature of the product in connection with which it is used. In re Bright - Crest Ltd., 204 USPQ 591 (TTAB 1979).

The words "in plain English" merely describes educational legal books published in non-technical language. (see enclosures).

Registration is refused because the mark, when applied to the applicant's goods, so resembles the mark(s) cited below as to be likely to cause confusion, or to cause mistake, or to deceive. (Section 2(d) of the Trademark Act, 15 U.S.C. 1052(d); TMEP section 1205.) (See attached copies.)

Reg. No(s). 1,373,141

-2-

When the marks, IN PLAIN ENGLISH and PLAIN ENGLISH, are used on computer programs and legal books, there is a likelihood of confusion. The registrant's identification of goods is broad enough to include computer programs concerning legal problems.

The Examiner also refuses to register the mark on the ground that it is part of a title of a single work. Section 1, 2 and 45 of the Act. A title of a single work is not registrable as a trademark. See In re Cooper, 117 USPQ 396 (CCPA 1958) and In re Scholastic, Inc., 223 USPQ 431 (TTAB 1984).

Although I have refused registration, you are entitled to respond to my findings by submitting evidence and arguments in support of the registrability of the mark.

Please submit one complete issue of the publication from which the specimens filed were obtained. This is necessary for me to fully consider the registrability of the mark. (37 CFR Section 2.61(b).)

Please contact me by telephone if you have any questions or need assistance in responding to this communication.

AD:sw4

Albin Drost
Trademark Attorney, Law Office I
703 557-3273

564335

EXHIBIT D
Page 7 of 12

Int. Cl.: 9

Prior U.S. Cl.: 38

**United States Patent and Trademark Office**  Reg. No. 1,373,141
Registered Nov. 26, 1985

## TRADEMARK
## SUPPLEMENTAL REGISTER

**PLAIN ENGLISH**

COMMON LANGUAGE SYSTEMS, INC. (FLORIDA CORPORATION)
100 E. SYBELIA AVE.
MAITLAND, FL 32751

FOR: COMPUTER PROGRAMS, IN CLASS 9 (U.S. CL. 38).

FIRST USE 1-0-1983; IN COMMERCE 10-15-1983.

SER. NO. 456,824, FILED P.R. 12-12-1983; AM. S.R. 10-7-1985.

AMOS T. MATTHEWS, JR., EXAMINING ATTORNEY

LEVEL 1 - 1 OF 11 STORIES

Copyright (c) 1985 The New York Law Publishing Company;
The National Law Journal

May 6, 1985

SECTION: IN FLUX; Pg. 43

LENGTH: 235 words

HEADLINE: Grandiloquent Idiosyncracy

BYLINE: Edited by Stuart M. Wise; Alexander Stille

BODY:
... courts. He moved to have these words struck from the plaintiffs' memorandum in the interest of protecting the English language.

"It is respectfully suggested that the practice of **law** ought to be conducted in **plain English**," Mr. Lapidus wrote, asking the court "to temporarily enjoin any of the attorneys who prepared the Memorandum from touching, reading or coming ...

LEVEL 1 - 2 OF 11 STORIES

Copyright (c) 1985 The Washington Post

February 18, 1985, Monday, Final Edition

SECTION: Metro; B1

LENGTH: 524 words

HEADLINE: Montgomery Wants to Make It Plain

BYLINE: Tom Vesey

KEYWORD: MONTGO

BODY:
... County Council is trying to get rid of the legal mumbo jumbo and become one of the first jurisdictions in the country to write its **laws** in plain **English**.

A council committee, risking the wrath of lawyers and bureaucrats, has just finished a manual on plain language, which the council ...

EXHIBIT D
Page 9 of 12

LEVEL 1 - 4 OF 11 STORIES

Copyright (c) 1983 The New York Law Publishing Company;
The National Law Journal

September 12, 1983

SECTION: Pg. 4

LENGTH: 344 words

HEADLINE: Law School Hired For Code Rewrite

BYLINE: David F. Pike

BODY:
... institute staff and students in its clinical program will review the county's 2,100-page code, combine and reorganize the various **laws** and then rewrite them in "**plain English.**" In addition, the group will research and draft legislation for the county council.

"What we're doing is replacing a one- ...


LEVEL 1 - 5 OF 11 STORIES

Copyright (c) 1982 The Christian Science Publishing Society;
The Christian Science Monitor

December 2, 1982, Thursday, Midwestern Edition

SECTION: Living; Pg. 15

LENGTH: 940 words

HEADLINE: Self-help guide simplifies everyday legal contracts

BYLINE: By Jane Anderson, Staff writer of The Christian Science Monitor

BODY:
... coming out in behalf of the layman.

Among those in the latter group are Joel D. Joseph and Jeffrey Hiller, authors of ''**Legal** Agreements in **Plain English**'' (Chicago, Contemporary Books, $9.95). In an attempt to simplify the business of everyday legal transactions, they spell out the basic ...

LEVEL 1 - 6 OF 11 STORIES

Proprietary to the United Press International 1982

June 25, 1982, Friday, AM cycle

SECTION: Domestic News

LENGTH: 300 words

HEADLINE: At last, judges who will speak English

DATELINE: CHICAGO

KEYWORD: Plainenglish

BODY:
   A group of federal judges, with help from people outside the legal profession, has drafted a set of jury instructions **in plain English** rather than **legal** jargon.

   Initial response from judges in the 11 federal circuits has been ''quite favorable,'' said the committee chairman, U.S. District ...


LEVEL 1 - 8 OF 11 STORIES

Copyright (c) 1980 Congressional Quarterly;
Editorial Research Reports--The Daily Service

November 26, 1980, Wednesday

LENGTH: 550 words

HEADLINE: WRITING GOOD

BYLINE: by Marc Leepson

DATELINE: WASHINGTON

BODY:
   ... organized last year in the nation's capital to lobby state legislatures to enact laws requiring that all legal documents, **laws** and regulations be written **in plain English**. Thus far, only four states -- Connecticut, Hawaii, Maine and New York -- have plain English laws on the books. Massachusetts, ...

LEVEL 1 - 9 OF 11 STORIES

Copyright (c) 1980 The Washington Post

July 14, 1980, Monday, Final Edition

SECTION: Washington Business; Pg. 3

LENGTH: 870 words

HEADLINE: 57,000 Customers Reply to Vepco Stock Prospectus Sent With Bills

BYLINE: By Jerry Knight, Washington Post Staff Writer

BODY:
... first of its kind. Smaller and simpler than most stock offering statements, the Vepco prospectus hasn't benefitted from the trend toward writing **legal** documents **in plain English.** For example:

"The company hereby undertakes to provide without charge to each person to whom a copy of the prospectus has been delivered, on the written ...

LEVEL 1 - 10 OF 11 STORIES

Copyright (c) 1979 American Banker

May 14, 1979, Monday

SECTION: Pg. 24

LENGTH: 3060 words

HEADLINE: Survival of Savings Banks In the Electronic Age Calls For Increased Awareness

BYLINE: By JOHN W. SAPANSKI, Senior executive vice president, Dime Savings Bank of New York

BODY:
... CRA, ECOA, RESPA, Truth-in-Lending, and in N.Y. State, the Plain English **Law** was, (interestingly the Plain English **Law** was not written **in plain English)** , Trust Savings, and Mortgage Disclosure G 10 -- just to name a few burdens.
System Development